ESTADO LIBRE ASOCIADO DE PUERTO RICO
**TRIBUNAL DE APELACIONES**
**PANEL II**

| | | |
|---|---|---|
| **ADA INÉS CARMONA RIVERA**<br><br>Recurrente<br><br>v.<br><br>**MAYRA GASCOT, Presidenta Junta de Directores Condominio La Arboleda, TOTAL ADMINISTRATION INC., MAYRA I. BEZARES y FÉLIX COTTO**<br><br>Recurrido | TA2026RA00193 | **REVISIÓN** procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Caso Núm: C-SAN-2024-0017780<br><br>Sobre: Ley de Condominios de PR 129-2020, según enmendada) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante este foro revisor, la Sra. Ada Inés Carmona Rivera (señora Carmona Rivera o parte recurrente) mediante *Recurso de Revisión* y nos solicita que revoquemos la *Resolución Sumaria* emitida el 9 de febrero de 2026 por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el foro administrativo declaró *No Ha Lugar* a la *Querella* instada por la señora Carmona Rivera y, en consecuencia, ordenó el cierre y archivo de esta.

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

**I.**

Según surge del expediente, el caso de autos se originó el 21 de diciembre de 2023, cuando la señora Carmona Rivera instó una

*Querella* en contra de la Sra. Mayra Gascot (señora Gascot), Presidenta de la Junta de Directores del Condominio La Arboleda, Total Administration, Inc. (Total Administration), la Sra. Mayra Inés Bezares Gómez (señora Bezares Gómez) y el Sr. Félix Cotto Febo (señor Cotto Febo), al amparo de la Ley 129 de 16 de agosto de 2020, según enmendada, también conocida como *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1291 *et seq.* (Ley de Condominios).  En esencia, impugnó las actuaciones de la Junta de Directores.

Según las alegaciones, el 2 de octubre de 2023, el señor Cotto Febo comenzó a fungir como "administrador" del Condominio La Arboleda.  Ante ello, la señora Carmona Rivera sostuvo que le solicitó a este su licencia y/o permiso relacionado al cargo que ocupaba en la oficina de administración, así como las pólizas vigentes del contrato de administración.  Sin embargo, indicó que, luego de realizar una visita a las oficinas administrativas, el señor Cotto Febo le demostró no tener licencia ni permiso alguno.  Por tales hechos, solicitó al foro administrativo que emitiera las sanciones correspondientes por alegado incumplimiento a los Artículos 49 (a) (ii) y 58 de la Ley de Condominios, *supra*, así como con el Reglamento Núm. 9263 de 18 de febrero de 2021, denominado *Reglamento Sobre Licencia, Permiso y Registro de Administradores de Condominios* (Reglamento Núm. 9263).

Tras varias incidencias procesales, el 15 de septiembre de 2025, la señora Carmona Rivera presentó una *Moción en Cumplimiento de Orden y Enmendando Querella,* con el único propósito de incluir como parte querellada al Consejo de Titulares del Condominio La Arboleda (Consejo de Titulares).

El 7 de octubre de 2025, el Consejo de Titulares presentó un escrito intitulado *Moción en Contestación a Querella, Reiterando que se nos De Acceso a la Plataforma y Solicitud de Desestimación.* Mediante el mismo, negó las alegaciones formuladas en su contra y

arguyó que, la señora Carmona Rivera actuó de forma obstinada y en contravención de los principios de la buena fe al acudir al DACo en repetidas ocasiones. Además, adujo que, dicho foro administrativo carecía de jurisdicción para adjudicar reclamaciones sobre licenciamiento de agentes administradores al amparo del Reglamento Núm. 9263, *supra*. Asimismo, expuso que el reclamo instado por la señora Carmona Rivera era académico toda vez que, Total Administration había cesado sus servicios al Consejo de Titulares. Por tal razón, solicitó al DACo la desestimación de la querella instada en su contra.

En respuesta, la señora Carmona Rivera presentó una *Moción en Cumplimiento de Orden; en Oposición a Desestimación y Anotación de Rebeldía [...].* En esta, arguyó que, ante la falta de respuesta y diligencia del Consejo de Titulares, se había visto forzada a acudir al foro administrativo para vindicar sus derechos como titular. A su vez, negó que su reclamación se hubiese tornado académica, pues a su juicio, las violaciones cometidas durante el período en que la compañía ejerció la administración del condominio subsistían y eran sancionables bajo la autoridad reglamentaria del DACo. Puntualizó que, el cese posterior de funciones no extinguía la jurisdicción del ente administrativo, ni eliminaba la responsabilidad derivada de actuaciones previas contrarias a la ley o al reglamento. Razonó además que dicha actuación era susceptible de repetirse, dado a que Total Administration podría continuar realizando contrataciones sin cumplir con los requisitos legales y cualquier otro consejo de titulares podría, de igual forma, incurrir en prácticas similares, perpetuando un patrón de incumplimiento capaz de vulnerar los derechos de los titulares y debilitar la legitimidad institucional.

Evaluados los escritos de las partes, el 9 de febrero de 2026, el foro administrativo emitió y notificó la *Resolución Sumaria* que hoy

revisamos. Mediante el referido dictamen, el DACo declaró *No Ha Lugar* a la querella de epígrafe y, en consecuencia, ordenó el cierre y archivo del caso. Determinó el foro administrativo que la Ley de Condominios, *supra*, y su reglamento no confirieron facultades a la División Especial de Adjudicación de Querellas de Condominios que permitieran concederle remedio alguno a la señora Carmona Rivera. Concluyó además que, el Reglamento Núm. 9263, *supra*, tampoco le concedía jurisdicción para atender querellas relacionadas con el cumplimiento o incumplimiento de este. Así, instó a la señora Carmona Rivera a presentar su reclamo, si alguno, ante las unidades que poseían jurisdicción para atender dicho tipo de reclamación. Finalmente, consignó que, aun si ostentara jurisdicción para atender los méritos del caso, la querella se había tornado académica pues, Total Administration había cesado de brindar servicios de agente administrador al Consejo de Titulares.

En desacuerdo, el 3 de marzo de 2026, la señora Carmona Rivera presentó una *Moción de Reconsideración*.

Transcurrido el plazo de quince (15) días sin que la agencia actuara sobre el referido recurso, el 17 de abril de 2026, la señora Carmona Rivera recurrió ante este foro revisor mediante *Recurso de Revisión* señalando los siguientes errores:

> PRIMER ERROR: El Departamento de Asuntos del Consumidor incurrió en error de derecho y violó el debido proceso de ley al emitir y notificar la Resolución de cierre y archivo sin haberla notificado a todas las partes con interés, específicamente a los coquerellados —Total Administration, Inc., Mayra I. Bezares y Félix Cotto—. Tal omisión constituye un defecto procesal sustancial que vicia el trámite adjudicativo, al privar a dichas partes de conocimiento efectivo de la determinación y de la oportunidad de ejercer los remedios disponibles en ley.

> En consecuencia, la Resolución Recurrida no es una final, por lo que este Tribunal carece de jurisdicción para revisarla.

> SEGUNDO ERROR: El Departamento de Asuntos del Consumidor incurrió en error de derecho y abusó de su discreción al rehusar adjudicar en los méritos una

controversia viva, al aplicar incorrectamente la doctrina de academicidad bajo el fundamento de que los coquerellados —Total Administration, Inc., Mayra I. Bezares y Félix Cotto— ya no prestan servicios al Consejo de Titulares. Dicha determinación desconoce que la controversia planteada versa sobre la legalidad de actuaciones pasadas realizadas en alegada violación a la Ley Núm. 129-2020 y al Reglamento Núm. 9263, las cuales son susceptibles de evaluación y sanción aun cuando hayan cesado.

Al así proceder, el DACo ignoró que el cese posterior de funciones no extingue la jurisdicción administrativa ni convierte el caso en académico, y permitió que dicha cesación opere como un mecanismo para evadir la fiscalización administrativa. Ello desvirtúa el esquema regulatorio aplicable y priva a la parte recurrente de un remedio efectivo frente a incumplimientos ya consumados.

TERCER ERROR: El Departamento de Asuntos del Consumidor incurrió en error de derecho al omitir adjudicar la responsabilidad institucional del Consejo de Titulares bajo los Artículos 49 y 58 de la Ley Núm. 129-2020, limitándose indebidamente a declarar el caso como académico sin atender los señalamientos sustantivos formulados en su contra. La querella enmendada imputó al Consejo actuaciones concretas relacionadas con la contratación y supervisión del agente administrador en alegada violación al ordenamiento aplicable, las cuales subsisten independientemente del cese de funciones de terceros.

Al así proceder, el DACO eludió evaluar el cumplimiento de los deberes indelegables del Consejo de Titulares, particularmente su obligación de seleccionar, fiscalizar y asegurar que las entidades contratadas cumplan con los requisitos legales y reglamentarios. Tal omisión priva de efectividad las disposiciones de la Ley de Condominios y deja sin remedio la conducta institucional impugnado.

El 11 de mayo de 2026, compareció el Consejo de Titulares mediante *Alegato en Oposición a Revisión*. Luego, el 4 de junio de 2026, Total Administration, Inc. y la señora Bezares Gómez presentaron su *Alegato en Oposición a Revisión*.

Con el beneficio de la comparecencia de todas las partes, estamos en posición de resolver.

**II.**

**A.**

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias

administrativas. *Katiria´s Café v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[1]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008). Véase, además, *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591-592 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[2] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v.*

---

[1] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp., supra,* pág. 892.

[2] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota, supra,* pág. 728.

*U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez et al. v. DACo, supra,* que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez et al. v. DACo, supra,* que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le

corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La capacidad de los foros adjudicativos para intervenir en un pleito está sujeta a que el mismo sea justiciable. *Buxó Santiago v. ELA et als.,* 2024 DPR 130, 215 DPR ___ (2024). Esto responde a que estos solo deben justipreciar controversias reales, definidas y concretas, donde existan partes con intereses antagónicos que buscan obtener un remedio que afecte su relación jurídica. *Super Asphalt v. AFI y otro,* 206 DPR 803, 815 (2021); *Amador Roberts et als. v. ELA,* 191 DPR 268, 282 (2014); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011); *E.L.A. v. Aguayo,* 80 DPR 552, 583-584 (1958). Consecuentemente, nuestra jurisprudencia ha dispuesto que las siguientes controversias no son justiciables: (1) aquellas que procuran resolver una cuestión política; (2) cuando una parte litigante carece de legitimación activa; (3) **cuando sucesos ocurridos con posterioridad a la presentación de un pleito tornan la controversia en académica**; (4) aquellos pleitos donde las partes envueltas buscan obtener una opinión consultiva; y (5) cuando la causa de acción no está madura. *Super Asphalt v. AFI y otros, supra,* pág. 815; *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 932*; U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 280 (2010); *Noriega v. Hernández Colón,* 135 DPR 406, 421-422 (1994). (Énfasis nuestro).

Como vemos, la academicidad constituye uno de los supuestos de autolimitación adjudicativa. Ahora bien, esta figura jurídica tiene lugar cuando "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente".

*San Gerónimo Caribe Project v. A.R.Pe.*, 174 DPR 640, 652 (2008). Por tanto, "al evaluar el concepto de academicidad hay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente". *Íd.*, pág. 653. Así pues, un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se ha perdido". *Asoc. Fotoperiodistas v. Rivera Schatz, supra*, pág. 933. Véase, además, *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 982-983 (2011); *San Gerónimo Caribe Project v. ARPe, supra*, págs. 652-653; *PPD v. Gobernador I,* 139 DPR 643, 676 (1995). En otras palabras, "[u]na controversia inicialmente justiciable se torna académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución". *Amador Roberts et als. v. ELA, supra*, pág. 283, citando a *Com. de la Mujer v. Srio. de Justicia,* 109 DPR 715, 724-725 (1980). La doctrina de academicidad requiere que, durante todas las etapas de un procedimiento adversativo, incluso en la etapa de apelación o revisión, exista una controversia genuina entre las partes. *Báez Díaz v. ELA*, 179 DPR 605, 617 (2010).

Por imperativo constitucional (ausencia de caso o controversia) o por motivo de autolimitación judicial, los tribunales nos debemos abstener de considerar los méritos de un caso cuando determinemos que éste se ha tornado académico. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 73 (2017). A pesar de lo antes señalado, se han reconocido varias excepciones a la doctrina de la academicidad que permiten que se considere un caso posiblemente académico; a saber: (1) cuando se plantea una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando la situación de hechos ha sido cambiada por el demandado, pero no tiene visos de permanencia; (3) cuando subsisten consecuencias colaterales que tienen vigencia y actualidad. *Amadeo Ocasio et al.*

*v. Gobernador et al.*, 211 DPR 278, 288 (2023); *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 933; *UPR v. Laborde Torres y otros I, supra,* pág. 281.

### C.

La Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA secs. 1921 *et seq.*, se aprobó con el propósito de viabilizar la propiedad individual sobre un apartamento, que forma parte de un inmueble sometido al Régimen de Propiedad Horizontal, de manera que cada titular tenga el pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA sec. 1921a. En su Exposición de Motivos, el estatuto también hace referencia a que este se aprobó con el propósito de establecer un régimen jurídico que facilitara la vida en convivencia y propiciara la disponibilidad de viviendas en un área restringida de terreno. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Véase, además, Exposición de Motivos de la Ley de Condominios, *supra*.

En miras a la consecución de su propósito, la Ley de Condominios, *supra*, contempla la convergencia de diversos actores en el manejo del Régimen de Propiedad Horizontal. Entre estos se encuentra la figura del Consejo de Titulares y el Agente Administrador. La Ley de Condominios, *supra*, define el primero como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares", mientras que el último es aquella "[p]ersona designada por el Consejo de Titulares para administrar la operación diaria del condominio, bajo la supervisión del Director o la Junta de Directores". 31 LPRA sec. 1921b.

Así pues, el Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen

de Propiedad Horizontal. 31 LPRA sec. 1922t. Conforme a ello, sus resoluciones y acuerdos serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio, siempre y cuando hayan sido adoptados en asambleas debidamente convocadas y constituidas. *Íd.*

El Consejo de Titulares posee, por virtud de ley, ciertos poderes y deberes, entre los cuales se destaca la facultad para aprobar el presupuesto anual y los estados financieros anuales, así como para intervenir y tomar decisiones sobre asuntos de interés general y tomar aquellas medidas necesarias y convenientes para mejorar el servicio común. 31 LPRA sec. 1922u. Asimismo, le corresponde a dicho ente escoger al Agente Administrador, quien podrá ser una persona natural o jurídica, y en quien el Consejo de Titulares, el Director o la Junta de Directores podrá delegar las facultades y deberes que les permita el reglamento. *Íd.* A esos efectos, el contrato de administración deberá contener los siguientes requisitos mínimos:

> (1) una póliza, a cargo del Agente Administrador, de responsabilidad pública con cubierta mínima de quinientos mil dólares ($500,000.00); (2) una póliza, a cargo del Agente Administrador, sobre riesgos por deshonestidad o constitutivos de delito o fraude (crime), (3) una póliza, a cargo del Agente Administrador, sobre responsabilidad profesional con cubierta mínima de quinientos mil dólares ($500,000.00), (4) poseer una póliza vigente obrero-patronal expedida por la Corporación del Fondo del Seguro del Estado, y (5) presentar un Certificado Negativo de Antecedentes Penales. De ser el Agente Administrador una persona jurídica, el Certificado Negativo de Antecedentes Penales será del Oficial Principal de la entidad y de todas las personas naturales que trabajen directamente en la administración de dicho condominio. Los requisitos aquí establecidos deberán estar vigentes en todo momento que se persista la relación contractual. Será deber del Agente Administrador de suministrar los documentos que acrediten el cumplimiento y será deber de la Junta de Directores, solicitar los mismos.

De otra parte, el Artículo 65 de la Ley de Condominios, *supra,* permite que las acciones u omisiones de la Junta de Directores, del

Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares, puedan ser impugnados. 31 LPRA sec. 1923j. En el caso de los titulares que sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, **la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor**. *Íd.* (Énfasis nuestro). Sobre la impugnación, dispone textualmente el referido artículo que:

> Para todo tipo de impugnación, se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

> En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años.

> *Íd.*

### III.

En su escrito, la parte recurrente hace constar su inconformidad con la decisión del DACo de declarar *no ha lugar* a la querella instada contra la parte recurrida.

En su primer señalamiento de error, la parte recurrente aduce que incidió el DACo al emitir y notificar la *Resolución* de cierre y archivo sin haberla notificado a todas las partes con interés, específicamente a los coquerellados, Total Administration, la señora Bezares Gómez y el señor Cotto Febo. Manifiesta que dicha omisión incide directamente sobre la validez del trámite adjudicativo pues, la notificación adecuada constituye un requisito indispensable para que una determinación surta efectos jurídicos y comience a transcurrir el término jurisdiccional para solicitar revisión judicial.

Por su parte, el Consejo de Titulares plantea que la parte recurrente no tiene legitimación activa para plantear dicho error

pues, la referida omisión no le afectó procesal ni sustantivamente. Asimismo, Total Administration y la señora Bezares Gómez arguyen que, la parte recurrente carece de legitimación activa para invocar una alegada falta de notificación que, de haber ocurrido, no le causó indefensión alguna. Señalan que esta reconoció haber recibido la *Resolución*, además de que presentó reconsideración y acudió en revisión ante el foro intermedio. Argumentan que, ante dicho cuadro fáctico, la parte recurrente no puede utilizar una supuesta irregularidad procesal que no le causó perjuicio y que las partes presuntamente afectadas no reclaman, como mecanismo para obtener la revocación de la determinación recurrida. *Veamos.*

En este caso, aun si asumiéramos que la resolución recurrida no fue notificada a todas las partes con interés, la parte recurrente no demostró haber sufrido perjuicio alguno como consecuencia de la alegada omisión. Por el contrario, del expediente se desprende que la parte recurrente recibió oportunamente la determinación emitida por el DACo, presentó una solicitud de reconsideración y posteriormente acudió en revisión judicial dentro de los términos correspondientes. En consecuencia, no se menoscabó su derecho a un debido proceso de ley ni se afectó su capacidad para impugnar la determinación administrativa. Además, la alegada falta de notificación concierne a derechos procesales que correspondería reclamar, en todo caso, a las partes presuntamente afectadas. Sin embargo, los recurridos aquí aseveraron no invocar indefensión alguna. *No se cometió el primer error.*

En su segundo señalamiento de error, la parte recurrente sostiene que erró el foro administrativo al rehusar adjudicar en los méritos una controversia viva, al aplicar incorrectamente la doctrina de academicidad bajo el fundamento de que los coquerellados ya no prestan servicios al Consejo de Titulares. Arguye que, el DACo ignoró que el cese posterior de funciones no extingue la jurisdicción

administrativa ni convierte el caso en académico, así como que permitió que ello operara como un mecanismo para evadir la fiscalización administrativa, desvirtuando entonces el esquema regulatorio y privando a la parte recurrente de un remedio efectivo.

En su tercer planteamiento de error, la parte recurrente arguye que, el DACo incurrió en error de derecho al omitir adjudicar la responsabilidad institucional del Consejo de Titulares bajo los Artículos 49 y 58 de la Ley de Condominios, *supra*. Manifiesta que, la querella enmendada imputó al Consejo de Titulares actuaciones específicas relacionadas a la contratación y supervisión del agente administrador en alegada violación al ordenamiento aplicable, las cuales subsisten independientemente del cese de funciones de terceros. Así, plantea que el ente administrativo eludió evaluar el cumplimiento de los deberes indelegables del Consejo de Titulares, particularmente su obligación de seleccionar, fiscalizar y asegurar que las entidades contratadas cumplan con los requisitos legales.

Por su parte, el Consejo de Titulares arguye que el reclamo es académico toda vez que los coquerellados no prestan servicios en la actualidad. A su vez, Total Administration y la señora Bezares Gómez plantean que, ante el cese de la relación contractual, la ausencia de remedio compensatorio individual contra los comparecientes y el alcance de la querella enmendada, el DACo actuó razonablemente al concluir que no subsistía una controversia práctica y adversativa que justificara continuar el procedimiento. Señalaron que la controversia medular no es si el foro administrativo posee autoridad sancionadora, sino si la parte recurrente demostró que el archivo por academicidad fue arbitrario o irrazonable. Replican también que no existe ningún mecanismo institucional que garantice que se repita la misma controversia entre las partes, pero señala que en el caso de que vuelva a prestar servicios al Condominio e incurra en las conductas impugnadas, la parte

recurrente contaría con el remedio de presentar una nueva querella, sin que la controversia evadiera revisión judicial. Ello pues, no se trata de un tipo de controversia inherentemente efímera que por su naturaleza tienda a evadir adjudicación. *Le asiste la razón.*

Coincidimos con la determinación del foro recurrido en cuanto concluyó que no subsistía una controversia susceptible de remedio pues, Total Administration ya no brinda sus servicios como agente administrador. Aunque la parte recurrente sostiene que el DACo debió adjudicar la alegada responsabilidad institucional del Consejo de Titulares bajo los Artículos 49 y 58 de la Ley de Condominios, *supra,* lo cierto es que la mera alegación de incumplimiento no basta para derrotar la doctrina de academicidad, cuando los hechos que dieron origen a la controversia de autos han cesado y no existe un remedio concreto pendiente de adjudicación. Resolver los planteamientos esbozados por la parte recurrente, en estas circunstancias, habría requerido emitir un pronunciamiento sobre actuaciones pasadas sin efecto práctico alguno sobre la relación jurídica vigente entre las partes.

De igual forma, no encontramos fundamento alguno para aplicar cualquiera de las excepciones reconocidas a la doctrina de academicidad. La controversia planteada no constituye una susceptible de repetirse y evadir revisión judicial, pues de surgir nuevamente circunstancias similares a las del caso de autos la parte recurrente tendría disponible el remedio de presentar una nueva querella ante el foro administrativo. Además, esta tampoco demostró una probabilidad razonable de recurrencia entre las mismas partes o que el daño es de tan corta duración que la controversia siempre se tornará académica antes de que la litigación se complete.

Así las cosas, colegimos que el DACo actuó correctamente al desestimar la *Querella* instada por la parte recurrente por razón de

academicidad. Del expediente ante nuestra consideración se desprende que no existe controversia real ni justiciable dado a los cambios anteriormente expuestos. En virtud de lo antes expuesto, concluimos que la parte recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. En consecuencia, confirmamos la *Resolución Sumaria* impugnada.

**IV.**

Por los fundamentos expuestos, se confirma el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones